Madam Clerk, please call the case. 3-12-0-5-8-5. The people of the State of Illinois enter into a dramatic meeting to discuss the real history of the tale of Mayor Robert Cohut. Please proceed. May it please the Court. Good morning, Your Honors. Mr. Counsel. My name is Brian Cohut. I'm an Assistant Appellate Defender with the Office of the State Appellate Defender, and I represent Mr. Neil Ackerman, the defendant in this criminal case. Mr. Ackerman was convicted of solicitation of murder for hire and sentenced to 30 years' imprisonment. On direct appeal, this Court vacated his $200 DNA fee but otherwise confirmed his conviction in sentence. He filed a post-conviction petition that's the subject of this current appeal. On appeal here, Mr. Ackerman raises three issues. Two of these issues are credit issues, and the State has confessed error on these. The issue before this Court today is whether Mr. Ackerman stated the gist of a claim of ineffective assistance of appellate counsel where the circuit court failed to adequately... did not take adequate steps to determine whether the risk of potential conflict was too remote to warrant separate counsel. On the second day of trial, Mr. Ackerman's attorney, Michael Knight, approached the Court and said he just found out that his direct supervisor, Gregory DeBoard, previously was with the State's Attorney's Office. And as with that office, as a member of the State's Attorney's Office, he applied for or sought the warrant that allowed for the overhear in this case. The overhear was the greatest part of the evidence here on the solicitation of murder for hire charge. Thus, the record shows that Knight's immediate supervisor worked on this case with the State's Attorney's Office. And under Spreitzer, the potential conflict was brought to the Court's attention. But, you know, the Court had a very thorough questioning on this point, didn't they? Well, he... And it didn't appear that the person really had any connection with this case. I would tend to agree with you. Mr. DeBoard was not consulted on this case. That is clear from the record here. I mean, they put up a wall. They said that, you know, you're not allowed to consult on specific cases. And so the trial judge, appropriately so, had a lot of questions about this whole thing in the record. It was all related to the consultation on the specific case. However, there was no questions as to the supervisory relationship between Mr. Knight and his direct supervisor, Mr. DeBoard. And under Hardin, when the defendant raises the gist of a supervisory relationship, then the Court has to take adequate steps to make sure that there's no conflict there. What the Court failed to do here, Your Honor, and what Mr. Ackerman's stating, what he's alleging here before this Court, is the Court failed to determine whether Mr. DeBoard had any control overnight, whether he controlled his salary, whether he controlled his working hours, whether he controlled the vacation time that he earned, whether he controlled his caseload, or what kind of cases he got or he didn't get, or any of those things, any of that interpersonal relationship that would occur within the office between the two attorneys. See, I just don't understand, because our rule's not a per se rule in this kind of case, in this kind of situation, is it? It is not a per se conflict. Under Schweitzer, it's not determined to be a per se conflict. But since it was brought to the Court's attention at an early stage, the Court is required, it's the duty of the Court to make the inquiry. It's a question of whether that inquiry was adequate. And here Mr. Ackerman maintains that it was inadequate because the judge never looked at this supervisory relationship between the two attorneys. See, he solely looked at how DeBoard could affect the case, not how DeBoard could affect the attorney. This judge did a lot more than a lot of judges have done in these kinds of situations, right? I don't know the answer to that personally. But again, he only looked at the consultation regarding the case. He did not look at how the two attorneys interacted. And it's these type of subtle influences that are identified by the Illinois Court, which could have adversely affected Knight's ability to defend his client independently and vigorously. He would be low to attack the work of his supervisor if he knew that his salary was in question, or his advancement in the office might have been perhaps influenced. But the raw speculation and conjecture that you're pointing out is, even though there was this wall, as you talk about it, in this particular case, there could be some subtle, unidentified connections that could perhaps unconsciously influence somebody. Well, I don't think they're necessarily identified. He's his direct supervisor. I mean, there are subtle influences of a person attacking the work of their supervisor. And the duty of the court here... Well, what aspect of the case is the attack on the supervisor? It would be the warrant leading to the overhear in this case. Now, there was a discussion on the record concerning whether this was a custodial interrogation. So Mr. Knight sought out, consulted with his supervisors. He said he didn't consult with the board, but he said at the time he was consulting with the supervisors. One of them was the public defender of the office at Mr. Australia. He was asking about this potential overhear. But it was in relation to whether he was in custodial interrogation. Because Mr. Knight, on the record, says, well, my boss says that Perkins, too, is distinguishable. Perkins, too, is a question of whether he's in custody at the time that he's being talked to by this inmate. And Perkins, too, of course, was in custody. So the question of whether the judicial order allowing the overhear was never contested. There's nothing on the record indicating that that was contested. And I need to remind the court that this is the first stage of the post-conviction petition. I mean, all he has to do is allege the gist of the constitutional claim here, that ineffective assistance of counsel. But if an overhear is contested, an overhear order is contested, then it's the judge's work that's being challenged, not the prosecutor's work. Is there any allegation that the prosecutor that applied for the overhear acted improperly or misconstrued what the facts would be? There's no specific allegation related to the overhear. It's just that's the part of the case that the prosecutor was involved in when he was with the state's attorney's office, specifically with this case. So if there is a possibility, we don't know at this stage because we're at the first stage of the post-conviction process. I mean, all he has to do is state the gist of the constitutional claim. And here he does, ineffective assistance of appellate counsel for failing to allege that the circuit court failed to take adequate steps to determine whether there's a potential conflict. So we haven't been able to flesh that out on the record at this point. Your Honors, also, Mr. Ackerman did not waive this claim. The word waive was never used. The word give up or relinquish was never used when the court was speaking with Mr. Ackerman. All the court said was, are you satisfied with your terms? And that's insufficient to constitute waiver under cases like Kester. And furthermore, the significance of the potential conflict was never explained to Mr. Ackerman. He was never told it. If you waive this potential conflict, then Mr. Knight might not contest any of Mr. DeBoer's work. And for the foregoing reasons, Mr. Ackerman respectfully requests that this court simply remand this for second stage post-conviction proceedings. Let me ask you a quick question about the $5 per day credit towards the court, the one that the state conceded. And when we look at these de novo, we don't have to accept the concession. I agree. So here it's deposited into the county's general fund that's used to finance the county court system, right? Yeah, the $50 court system fee. So doesn't that look more like a fee, not a fine? Well, the Illinois Supreme Court looked at specific fees that were under the same statute, and I believe it was Graves. Graves, yes. And they determined that these other fees, even because they went into the general assembly fund and they were not provided for specific court costs, that they were determined to be funds. What were those other fees? Were they living out court fees? It could be wrong. I don't know off the top of my head, Your Honor. Yeah, I don't know off the top of my head. But see, these fees, it's determined, were put into the county's general fund used to finance the county's court system. Right? The court system fee was imposed under the county's code. I don't know if it was imposed to fund that specific county's court system. And even if it was, it's more of a general fee. It's not imposed to support this case. It's the court's, the county's imposition of costs in this particular case. It would just be like a general. And then the Supreme Court in Graves held that that's more in essence. I guess in essence is whether or not Graves applies or not to this case. Yes, yeah, I think that's right on point. I'm sorry, Your Honor? That's what it comes down to. Yes, yes, absolutely. I think I totally agree with that, and I believe it does. I have a follow-up question to Justice Carter's question. And I note at page 20 of your brief, you write, and I think correctly, but I haven't had a chance to look at the record myself. The first paragraph, defendant was assessed a $50 court system's fee. And you cite to page C, 129 and 30. Is that the clerk's cost sheet? Or was that a court order? I believe it's a court order. I looked at it last night, and it doesn't specifically say. It's not signed by the court. But the writing is exactly the same as the judgment order. So it was written up by the same person who read the judgment order. Presumably that would be the judge in the case. Okay. Because you were, it seems to me cautious in your language that it was assessed. You're not saying the court assessed it. There's an argument here, and I'll look at those pages, whether it was the judge that ordered it or the clerk that assessed it. But I appreciate that you looked at it last night, and it doesn't bear the judge's signature. I don't think it does. But the handwriting does look exactly the same. But it's not one of those pre-printed, computer-generated costs? Not at all. It's handwritten. It is handwritten. And it's also important to note that Mr. Ackerman raised this issue in the post-conviction petition, and he raised it under the guise of ineffective assistance of trial counsel. So if it's the court composing it, then trial counsel should have done something about that. So we should still obtain relief. Even if we find that it's a fee and not a fine, the $5 per diem credit could still be applied to the BCD fund, which was imposed. I know you want the fine. I don't think that's accurate, because I think the Violent Crime Victim Assistance Fund statute says that the $5 per diem does not apply to that. It is a fine, but I don't think the $5 applies to that. That's correct. Okay. And Mr. Ackerman, respectfully request that the court remand this clause for second stage proceedings. Thank you. Good morning. Good morning, Your Honors. May it please the court, counsel. Your Honors, I truly believe everything has been covered in my brief. I will stand on that brief and respond to any questions you might have on this matter. I have questions on the fee. And my issue is, you know, we're getting these issues, these fines and costs issues over and over and over again, and we have the exact same issue with regard to this particular fee in People v. Hunter. Yes. And Mr. Austell wrote the brief for the state. Yes. And we confessed error. I'm sorry to interrupt. Well, he fought hard in Hunter saying it was a fee and not a fine. And you decided it was a fine. Am I getting that right? I think you're getting confused. Okay. But you decided it was. I think we decided the judge didn't order it. In Hunter. Hunter, you know, we confessed error in this case before Hunter came down, of course. Okay. And that is my question. Is Mr. Austell wrote his brief in Hunter in September? And no. Yes. His was first and then yours came next. And you conceded it was a fine. And I'm wondering, has the state changed their position since you wrote the brief? We're happy that Mark Austell was able to prevail. But, you know, I'm bound by what I did. I'm not about to shortstop, you know, go behind my opponent's back. Oh, I agree. I agree. And I'm just wondering, just wondering. These issues are confusing enough for us. And so it's helpful if the appellate prosecutor states the same approach within a 60-day time period. But, you know, as you can see, we're bouncing these fees, fines issues back and forth very carefully on review. So at this point, you are not changing your position with regard to the concession. Hunter exists, but we did what we did. Thank you, Your Honor. Thank you very much for all your arguments. The court will now take this matter under advisement and render a decision with dispatch post haste.